**TRAVENOL LABORATORIES, INC., Appellant,**

v.

**The UNITED STATES, Appellee.**

**Appeal No. 79–40.**

United States Court of Customs and Patent Appeals.

May 29, 1980.

Robert E. Burke, Chicago, attorney of record for appellant.

Alice Daniels, Asst. Atty. Gen., Washington, D. C., David M. Cohen, Director, Joseph I. Liebman, Attorney in Charge, New York City, Field Office for Customs Litigation.

Before MARKEY, Chief Judge, RICH, BALDWIN, and MILLER, Judges, and WINNER, Judge.*

RICH, Judge.

This appeal is from the judgment of the United States Customs Court in *Travenol Laboratories, Inc. v. United States*, 83 Cust.Ct. ——, C.D. 4812, 476 F.Supp. 1075 (1979), granting summary judgment in favor of the United States and sustaining the classification of the imported merchandise. We affirm.

### The Imported Merchandise

The imports are medical or surgical intravenous "solution administration sets." The following is the description by the Customs Court (83 Cust.Ct. at ——, 476 F.Supp. at 1076). Reference is made to the drawing in its opinion, which we need not repeat.

The set—which is in chief value of plastic and used to conduct liquids—consists of approximately 70 inches of plastic tubing, a connector, a protector for the connector, a needle adapter, a protector for the needle adapter, a drip chamber, a Flashball [TM] injection site, and a Flo-Trol [TM] clamp. The interior fluid path of the set is sterile as imported.

\* \* \* \* \* \*

The set is chiefly used in the intravenous administration of blood or other medical solutions to patients and operates in the following manner: The connector is inserted into the outlet of a solution container which is suspended. The drip chamber is half filled, whereupon the Flashball injection site over the needle adapter is grasped and its protector removed. A needle is then attached to the needle adapter and air is removed from the set. The Flo-Trol clamp is then closed and venipuncture performed. After this, the Flashball is squeezed and released and, if the needle is properly inserted into the vein, the blood flows back into the needle adapter. The Flo-

Trol clamp is then moved to regulate the flow of the medical solution to the patient.

### Statutes Involved

The following provisions of the Tariff Schedules of the United States (TSUS) are involved:

Classified under:

Schedule 7, Part 2:

Subpart B.—Medical and Surgical Instruments and Apparatus; X-Ray Apparatus

\* \* \* \* \* \* \*

Medical, dental, surgical and veterinary instruments and apparatus (including electro-medical apparatus and opthalmic instruments), and parts thereof:

\* \* \* \* \* \* \*

Other:

\* \* \* \* \* \* \*

709.27   Other ................... 18% ad val.

Claimed under:

Schedule 7, Part 12:

Subpart C.—Specified Rubber and Plastics Products

\* \* \* \* \* \* \*

772.65   Hose, pipe, and tubing, all the foregoing not specially provided for, of rubber or plastics, suitable for conducting gases or liquids, with or without attached fittings ..................... 4% ad val.

### Customs Court

The Customs Court rejected appellant's claim that the sets are more specifically provided for as tubing n. s. p. f. under TSUS item 772.65 than as medical/surgical apparatus under item 709.27. It held the reverse to be true.

The court discussed the issue of relative specificity. It called attention to General Interpretative Rule 10(c), which provides that an article which is susceptible of classification under more than one item is to be classified under the item which most specifically provides for it, finding the rule applicable in the instant case.

---

\* The Honorable Fred M. Winner, Chief Judge, United States District Court for the District of Colorado, sitting by designation.

The court observed that the present conflict is between a use provision (item 709.27) and an eo nomine provision (item 772.65). The court applied the rule that, in the absence of contrary legislative intent, a use provision is generally more specific than an eo nomine provision. The court noted that item 772.65 is a "basket provision" and applied the principle that such provisions are not to prevail where the article is specially provided for elsewhere in an item which is not qualified by a "not specially provided for" clause. The court found no legislative intent which would preclude application of this principle.

Finally, the court distinguished the cases relied upon by appellant because it found that the TSUS items which they involved were different from those in the case at bar, each having different limitations not applicable to the present case. Furthermore, the TSUS items involved in those cases were found by the court to be general versus eo nomine provisions, whereas here the provisions involved are eo nomine and use provisions, with the eo nomine ("tubing") provision containing a "not specially provided for" limitation. The court held that in such a circumstance the eo nomine provision is the less specific of the two.

## OPINION

We find no error in the well-reasoned opinion of the Customs Court. Judge Maletz properly applied the law to the facts here involved. We hereby adopt the reasoning of the opinion of the Customs Court as our own.

The judgment of the Customs Court is *affirmed.*